UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KLICKITAT COUNTY PUBLIC
HOSPITAL DISTRICT NO. 1,

                    Plaintiff,

          v.

MILORA DEVELOPMENTS, a Nevada
corporation; CHARLES D.
MILLER, and individual; and
DAVID S. MORSE, aka DUSTY
MOSS, an individual,

                    Defendants.

NO. CV-04-3045-EFS

**ORDER DENYING CGR'S MOTION TO INTERVENE AND MOTION TO QUASH, DENYING MR. MORSE'S CLAIM OF EXEMPTION, GRANTING IN PART AND DENYING IN PART MR. MORSE'S MOTION TO VACATE, AND DIRECTING CLERK'S OFFICE TO ENTER AN AMENDED JUDGMENT**

     A hearing was held in the above-captioned matter on April 5, 2005. Plaintiff was represented by Christopher Mertens and Joel Comfort, and David Shaw appeared on behalf of Daniel Morse[1] and CGR Properties, Inc. ("CGR"). Defendant Daniel Morse filed a Claim of Exemption, (Ct. Rec. 28), and a Motion to Vacate Default Judgment, (Ct. Rec. 30), before the Court. In addition, CGR Properties, Inc. filed a Motion for Leave to Intervene and Motion to Quash Garnishment, (Ct. Rec. 31). Plaintiff filed an Objection to Defendant Morse's Claim of Exemption, (Ct. Rec.

---

[1]  The Defendant named as "David Morse" identifies himself as "Daniel Morse." This individual has also utilize the name "Dusty Moss." The Court will refer to this Defendant as "Mr. Morse."

ORDER ~ 1

34), and oppositions to the motions.[2]  After hearing oral argument, the Court asked the parties to file supplemental pleadings specific to the issue of whether the default judgment was supported by sufficient evidence.  After hearing oral argument and reviewing the submitted materials and applicable case and statutory law, the Court is fully informed.  The Court denies CGR's motion to intervene and quash garnishment, denies Mr. Morse's claim of exemption, and grants in part (judgment amount is to be modified) and denies in part (default judgment is still in place) Mr. Morse's motion to vacate.

**A.  CGR Properties Inc.'s Motion for Leave to Intervene and Motion to Quash Garnishment, (Ct. Rec. 31)**

CGR Properties, Inc., a Washington corporation, seeks permission to intervene on the grounds that it is the owner of the majority of the money deposited in Riverview Community Bank account 0672 ("Account 0672").  CGR purchased a parcel of property known as the Columbia River Gorge RV Resort in Mosier, Oregon in January 2005.  In connection with this purchase, CGR obtained a loan from SLF Series F, LLC.  Part of this loan, in the amount of $100,279.63, was wire transferred by escrow to Account 0672; Account 0672 is in the name of Daniel Morse.  Later on January 24, 2005, CGR took a $60,000 draw from the loan proceeds and this draw was wired to Account 0672.  Mr. Morse, who is apparently the sole

---

[2]  The Objection was noted for hearing on March 22, 2005; while, the other motions were set to be heard on April 5, 2005. At the March 22, 2005, Objection/Exemption Hearing, both parties advised the Court that they desired to have the Objection and motions heard together at the April 5, 2005, hearing.

ORDER ~ 2

shareholder and president of CGR, states that the funds were deposited into Account 0672 because CGR had not yet opened a corporate checking account. Prior to the deposit of the two wire transfers, $38.87 was held in Account 0672.

CGR submits it should be allowed to intervene pursuant to Federal Rule of Civil Procedure 24(a) because the majority of the funds in Account 0672 are CGR's property and not the property of Daniel Morse. Rule 24(a) provides:

> anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action *and* the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, *unless* the applicant's interest is adequately represented by existing parties.

(Emphasis added.) Case law has emphasized Rule 24(a)(2) has four requirements: (1) the applicant must timely move to intervene, (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action, (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest, and (4) the applicant's interest must not be adequately represented by existing parties. *Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).

Plaintiff does not dispute that the motion was timely; rather, the dispute concerns the other three factors. CGR argues the cases *Yakima Adjustment Service, Inc. v. Durand*, 28 Wash. App. 180 (1981), and *Fireman's Fund Insurance Co. v. Northwest Paving & Construction Co., Inc.*, 77 Wash. App. 474 (1995), are indistinguishable and, thus, the

ORDER ~ 3

1  Court should allow intervention.  Plaintiff argues these cases are not

2  applicable; the Court agrees with Plaintiff's position.

3       These two cases allowing intervention involved writs of garnishment

4  issued to accounts where the judgment debtor was a joint account holder

5  with another individual.  As is explained in more detail below, when

6  money is held in a joint account, a question of fact exists as to whose

7  money it is, *i.e.* which joint account holder is the owner of the money.

8  Mr. Morse did not have a joint account with CGR; rather, the account was

9  in Mr. Morse's name only.  Accordingly, as is explained further below,

10 CGR's remedy is not to intervene in this matter, but rather to bring a

11 conversion action against Mr. Morse.  *See Universal Mktg & Entm't, Inc.*

12 *v. Bank One of Ariz.*, 203 Ariz. 266 (2002).  CGR does not have standing

13 to ask that the writ be quashed because CGR did not have a legal interest

14 in the bank account; accordingly, CGR may have a "significantly

15 protectable interest" relating to the loan proceeds; however, these loan

16 proceeds were deposited into an account solely in Mr. Morse's name.

17      Furthermore, the Court finds Mr. Morse adequately protects CGR's

18 interest because Mr. Morse is motivated to have the writ quashed and/or

19 the judgment vacated as Mr. Morse may face potential liability to CGR for

20 conversion.  The Court also finds CGR is not so situated that the

21 disposition of the action may impair or impede CGR's ability to protect

22 its interest in the loan proceeds as it can bring a conversion action

23 against Mr. Morse.  Accordingly, after weighing Rule 24(a)(2)'s

24 requirements, the Court denies CGR's Motion for Leave to Intervene and

25 Motion to Quash Garnishment, (Ct. Rec. 31).

26 ///

ORDER ~ 4

1        **2.   Claim of Exemption**

2        Mr. Morse claims two grounds for exemption from the writ of

3    garnishment: (1) he was not properly served with process and (2) the

4    $115,221.07 in his personal checking account actually belongs to a third

5    party, CGR.[3]   Under R.C.W. § 6.27.160, a defendant may assert an

6    exemption.   The defendant bears the burden of proving the claimed

7    exemption, "including the obligation to provide sufficient documentation

8    to identify the source and amount of any claimed exempt funds."  R.C.W.

9    § 6.27.160(2).

10            **a.   Service of Process**

11        In his briefing, Mr. Morse raised insufficient service arguments.

12   However, at the hearing, defense counsel stated that Mr. Morse was

13   withdrawing these arguments.   Accordingly, the Court denies as moot in

14   part the Claim for Exemption and the Motion to Vacate Judgment.

15            **b.   Owner of Funds in Riverview Community Bank Account 0672**

16       Mr. Morse contends the substantial majority of the funds held in his

17   personal Account 0672 are actually the property of CGR, as they represent

18   loan proceeds from an R.V. venture CGR entered into.   Mr. Morse submits

19   Washington law provides that the named individual on a bank account does

20   not have an ownership interest in the account funds simply because the

21   funds were deposited into the account, citing to *Yakima Adjustment*

22

23   _____

24       [3] These arguments, in addition to the arguments that the Complaint

25   fails to state a claim against Mr. Morse and that the judgment amount was

26   deficient, are grounds relied upon by Mr. Morse in his Motion to Vacate

     Judgment as well.

     ORDER ~ 5

*Service, Inc. v. Durand* and *Fireman's Fund Insurance Co. v. Northwest Paving and Construction Co., Inc.*.

As noted above, the Court finds these cases do not apply to the facts at hand. The judgment creditors in these two cases sought to garnish money held in a *joint* bank account of which the judgment debtor was one of the parties on the joint bank account. These cases establish the rule that "garnishment of a joint bank account reaches only those funds owned by the debtor. The burden of proving the ownership of the funds rests upon the joint depositors." *Yakima Adjustment Serv., Inc.*, 28 Wash. App. at 184-85. This rule is utilized in the context of joint bank accounts because there is a rebuttable presumption of equal ownership by the joint depositors and, therefore, it is a joint depositor's responsibility to show the true intention of the parties as to ownership. Thus, because a joint depositor may not have the right to all of the funds in the account, and a creditor has no greater rights to a fund than his debtor, the garnishment of a joint bank account only reaches those funds owned by the debtor. *Id.*

These cases are distinguishable simply because Mr. Morse's account was a sole personal checking account. R.C.W. § 30.22.090(1) provides, "funds on deposit in a single account belong to the depositor." In comparison, the statute pertaining to joint accounts states, "[f]unds on deposit in a joint account without right of survivorship and in a joint account with right of survivorship belong to the depositors in proportion to the net funds owned by each depositor on deposit in the account, unless the contract of deposit provides otherwise or there is clear and

convincing evidence of a contrary intent at the time the account was created." *Id.* § 30.22.090(2).

The definition of "depositor" further establishes that the funds in Account 0672 are to be treated as Mr. Morse's property in this writ of garnishment proceeding. Section 30.22.040(11) provides:

> "Depositor," when utilized in determining the rights of individuals to funds in an account, means an individual who owns the funds. *When utilized in determining the rights of a financial institution to make or withhold payment, and/or to take any other action with regard to funds held under a contract of deposit,* "depositor" means the individual or individuals who have the current right to payment of funds held under the contract of deposit without regard to the actual rights of ownership thereof by these individuals.

(emphasis added). Accordingly, under these banking statutes, in an action between Mr. Morse and CGR, CGR would be treated as the depositor and the recent funds deposited into Account 0672 would belong to CGR. However, because the funds were deposited into Mr. Morse's personal checking account at Riverview Community Bank, the Bank has the ability to garnish any money in this account to satisfy a judgment against Mr. Morse. This is because when determining the Bank's ability to garnish money in Account 0672, Mr. Morse, the individual on the sole account, is treated as the owner of the money in the account. Accordingly, the Bank can garnish this money. In turn, CGR's remedy is to bring a conversion action against Mr. Morse.[4] *See Universal Mktg & Entm't, Inc. v. Bank One*

---

[4] The Court finds the holding in *Marx v. Parker*, 9 Wash. 473 (1894),--that the money held in a sole personal account was held in "trust" for the city based on equitable principles and not based upon the banking documents or statutes--does not apply. *Marx* was decided prior

ORDER ~ 7

*of Ariz.*, 203 Ariz. 266 (2002).  As Plaintiff points out, and the Arizona court noted in *Universal Marketing and Entertainment, Inc.*, Mr. Morse and CGR could have held this money in trust for the corporation or utilized some other special deposit.  That did not occur.

The Court denies Mr. Morse's claim for exemption, and his motion to vacate in as far as it relied upon these same grounds, and the funds deposited into Account 0672 can be utilized by the Bank to satisfy a writ of garnishment against Mr. Morse.

## C.    Motion to Vacate

Vacation of defaults and default judgments are governed by Federal Rules of Civil Procedure 55(c) and 60(b).  Rule 60(b) allows the Court to relieve a party from a final judgment or order for any "reason justifying relief from the operation of the judgment" within one year after the judgment or order was entered.  "The 'good cause' standard that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b)." *Franchise Holding II, LLC. v. Huntington Rests. Group, Inc.*, 375 F.3d 922, 925 (9th Cir. 2004).  As the Ninth Circuit stated in *Patapoff v. Vollstedt's, Inc.*, 267 F.2d 863, 865 (9th Cir. 1959):

> Rule 60(b) is clearly designed to permit a desirable legal
> objective: that cases may be decided on their merits.  The

---

to the enacted of the 1982 Financial Institution Individual Account Deposit Act.  Since the enactment of this act, Washington courts have applied these financial banking statutes to determine a party's right to money held in a bank account. *See Fireman's Fund Ins. Co.*, 77 Wash. App. 474 (1995).

ORDER ~ 8

> recent cases applying Rule 60(b) have uniformly held that it must be given a liberal construction . . . . Since the interests of justice are best served by a trial on the merits, only after a careful study of all relevant considerations should courts refuse to open default judgments.

The Ninth Circuit has ruled that a district court may deny a motion to vacate if any of the following are present: (1) the plaintiff would be prejudiced if the judgment is set aside, (2) the defendant has no meritorious defense, or (3) the defendant's culpable conduct led to the default. *AANP v. Hayhurst*, 227 F.3d 1104, 1108 (9th Cir. 2000). As explained below, the Court concludes Plaintiff has established that it would be prejudiced if the judgment is set aside and that Mr. Morse's culpable conduct led to the default. The Court finds it is a closer question whether Mr. Morse has a meritorious defense. However, after viewing these three prongs, the Court utilizes its discretion to deny the motion to vacate, but amends the default judgment to reduce the judgment against Mr. Morse to $210,000.

### a.   Prejudice & Culpability

Plaintiff paid Defendants in this action approximately a half a million dollars. Defendants did not begin construction of the hospital powerplant project. Plaintiff filed this suit and then had difficulties serving the Defendants. After service, the Defendants did not respond. Plaintiff obtained a default judgment. Plaintiff discovered that Mr. Morse had money in the bank account which Milora had utilized previously, and Plaintiff obtained a writ of garnishment. It was only after this writ of garnishment was imposed that Mr. Morse appeared in this action. It is evident that Mr. Morse had notice prior to the motion for default as he sent a letter, dated October 16, 2004, to Plaintiff's counsel.

ORDER ~ 9

1   (Ct. Rec. 37, Ex. 10.)  Accordingly, since October 16, 2004, Mr. Morse
2   was aware of this proceeding.  The Court notes Plaintiff's counsel sent
3   a copy of the motion for default and motion for default judgment to four
4   different addresses Plaintiff's counsel had for Mr. Morse, but Mr. Morse
5   did not respond.  This conduct by Mr. Morse shows that he is culpable for
6   the entry of default judgment in that he was aware of the lawsuit but
7   choose not to file any documents with the Court until after the default
8   judgment was entered.  The Court finds Mr. Morse's culpable conduct is
9   evidence that Plaintiff will be prejudiced if the judgment is set aside
10  because Mr. Morse may continue to delay in responding to the Complaint,
11  thereby, limiting Plaintiff's ability to litigate this suit and/or
12  receive any potential recovery.

13      In addition, the Court finds Mr. Morse's personal use of the CGR
14  loan proceeds evidence an intent by Mr. Morse to control the funds and
15  to use these funds for his personal use and not as corporate funds to
16  further real estate development.  Mr. Morse submits he was being paid by
17  CGR and, thus, he had permission to utilize the CGR's loan proceeds
18  deposited in his personal bank account for personal expenses.  However,
19  Mr. Morse did not submit documentation establishing such a financial
20  arrangement.  Therefore, if the judgment is set aside, the Court finds
21  Mr. Morse will have an opportunity to move and hide assets, making it
22  difficult for Plaintiff to recover.  *See Franchise Holding II, LLC v.*
23  *Huntington Rests. Group, Inc.*, 375 F.3d 922, 925 (9th Cir. 2004).

24          **b.   Meritorious defense**

25      Mr. Morse argued the judgment should be set aside because he has
26  meritorious defenses as he was not personally served with a summons and

complaint and Plaintiff failed to state a claim against Mr. Morse.  As to the former, as noted above, Mr. Morse withdrew his lack of service arguments.  As to the latter, the Court finds Plaintiff sufficiently pled a claim against Mr. Morse.  Thus, the Court finds Mr. Morse does not have a meritorious defense to the default judgment.

Federal Rule of Civil Procedure 8(a) only requires that a pleading set forth a short and plain statement of the grounds for the court's jurisdiction, a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for relief.  *See Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1125 (9th Cir. 2002).  Mr. Morse argues the mere deposit of payments from Klickitat into his personal bank account does not create a breach of contract or a Washington Consumer Protection Act cause of action against Mr. Morse.  The Court agrees with this simple proposition; however, the Complaint, with attached Contract, supports a finding that Mr. Morse was either a third-party beneficiary or agent of Milora.  *See Stroud v. Beck*, 49 Wash. App. 2779 (1987); *Grand Lodge of the S.F.A. v. U.S. Fid. & Guar. Co.*, 2 Wash. 2d 561 (1940).  The Contract, which was attached to the Complaint, states in Paragraph 8:

> 'KVH' shall pay to 'Milora' the sum of USD $550,000.00 (Five hundred and fifty thousand dollars).  'Milora' will be accountable to 'KVH' for all materials and equipment supplied, and will produce a full accounting for the services and materials provided, upon completion of the project.  Any funds that are in excess of the required supply and installation amount will be returned to 'KVH' with the applicable added interest.

The Complaint did not allege that Mr. Morse was a named party to the Contract; rather the "Scope of Work" portion of the Contract called for payment in the amount of $550,000 to be made to Mr. Morse's Account 0672 unless otherwise directed, the Complaint alleges that $210,000 was

deposited by KVH directly into Mr. Morse's personal bank account, and the attached check copies support a finding that such payments occurred.

Mr. Morse again cites to *Fireman's Fund Insurance Co.* for the proposition that the fact the funds were deposited into his account did not give him the right to those funds. As discussed above, the Court finds, because Account 0672 was a sole personal bank account, Mr. Morse had an ownership interest to these funds as to the bank. The general pleading in the Complaint was sufficient to put Mr. Morse on notice that Plaintiff believed Mr. Morse received direct benefits from the Contract;[5] Mr. Morse had an opportunity to challenge the Complaint previously, and he failed to do so. Further, the Court finds the Complaint adequately alleges a Consumer Protection Act violation against Mr. Morse. For the above reasons, the Court denies in part Mr. Morse's Motion to Vacate because Plaintiff would be prejudiced by vacation, Mr. Morse's culpability led to the entry of the default judgment, and, even though Mr. Morse ultimately could have proven that he was not a third-party beneficiary or agent of Milora entitled to the contract benefits, the

---

[5] Plaintiff in its Objection to Claim of Exemption alleges that Mr. Morse and several associates, including Charles Miller, promoted an investment in a Nevada corporation named Etalon Card, Inc. as early as April or May 2002, which was a fraudulent venture, and that during 2002, Mr. Morse deposited substantial amounts of money into Account 0672 which were subsequently wired to an individual named Jonatan Schmidt, the president of Etalon Card, Inc. The Court finds such allegations irrelevant to the allegations in the Complaint at hand.

ORDER ~ 12

allegations in the Complaint were sufficient to put Mr. Morse on notice
of such allegations.

### c.    Klickitat's Proof of Damages

Mr. Morse argues Plaintiff's counsel's, Mr. Comfort's, declaration,
does not meet the Federal Rule of Civil Procedure 55 "proof of damages"
standard.  The Court finds there was sufficient evidence before the Court
to support the Default Judgment, however, the Court modifies the Judgment
as against Mr. Morse, as detailed below.

Federal Rule of Civil Procedure 55(b)(1) allows:

> [w]hen the plaintiff's claim against a defendant is for a sum
> certain or for a sum which can by computation be made certain,
> the clerk upon request of the plaintiff and upon affidavit of
> the amount due shall enter judgment for that amount and costs
> against the defendant, if the defendant has been defaulted for
> failure to appear and is not an infant or incompetent person.

Local Rule 55(b) allows the Clerk to refer any application for entry of
default judgment to the Court for review.  The Clerk did so here.

Plaintiff sought entry of judgment in amount of $432,000 (amount of
principal owed on contract), prejudgment interest in the amount of
$111,349.50, $10,000 in treble damages pursuant to Washington State
Consumer Protection Act ("CPA"), $10,374 in reasonable attorney's fees,
and $250.86 in taxable costs.  The Motion for Default Judgment was
supported by the Declaration of Joel Comfort and "the records and files
herein." Attached to the Complaint was a copy of the Contract and copies
of checks deposited into the various bank accounts.  Two of these checks,
totaling $210,000, were deposited into Mr. Morse's account.

The Court finds the principal amount owed was a "sum certain," *i.e.*
able to be determined by looking at the Contract, copies of checks
deposited, and copy of the $8,000 wire transfer back to Klickitat.  In

ORDER ~ 13

addition, the prejudgment interest and CPA treble damages were sums able

to be made certain after relying on the applicable statutes.

Furthermore, the Court had the ability to determine whether the requested

attorney's fees and taxable costs were reasonable.

Rule 55 does not specifically identify who is to provide the

"affidavit of amount due." The Court was able to find two cases related

to this issue: *United States v. Watkins*, 96 F.R.D. 556 (E.D. Tenn. 1982),

and *Federal Deposit Insurance Corp. v. Spartan Mining Co., Inc.*, 96

F.R.D. 677 (S.D.W.V. 1983); and Defendant cited to *Credit Lyonnais*

*Securities, Inc. v. Alcantara*, 183 F.3d 151 (2d Cir. 1999).

In *Watkins*, the United States moved the court for judgment by

default pursuant to Federal Rule of Civil Procedure 55(b)(2); the court

upon review determined that because the request involved a sum-certain,

the United States should have sought entry of a default judgment under

Rule 55(b)(1). 96 F.R.D. at 557. The United States' request for default

judgment was supported merely by an affidavit from plaintiff's counsel

which identified the sum certain. *Id.* By inference, it can be determined

the district court found an affidavit of counsel sufficient to support

a Rule 55(b)(1) request.

The district court in *Federal Deposit Insurance Corp.* addressed the

issue directly, stating:

> [defendants] suggest that plaintiff's affidavit in support of
> the entry of default judgment is deficient because . . . it was
> made by counsel for the plaintiff and therefore not based on
> personal knowledge. However, it is plain that the sum at issue
> is one that can be made certain by calculation through
> reference to the terms of the note and the schedule of
> payments. Defendants cite to no authority for the proposition
> that an affidavit in support of entry of a default judgment
> made by an attorney is not therefore appropriate. Plaintiff's
> attorney can be presumed, in the circumstances of this case,

ORDER ~ 14

to have knowledge of and access to the documentation upon which plaintiff's claim is based.

*Id.* at 683.   The Court agrees with the district court's analysis and conclusion.

As Defendant argues, the Second Circuit in *Credit Lyonnais Securities, Inc.* did state:

> [a]t the time judgment was entered, the court had before it only the allegations in the complaint and the affidavit of plaintiff's counsel, who did not purport to have personal knowledge of the facts, asserting an amount of damages sustained by plaintiff as a result of defendant's failure to deliver the securities.   This was insufficient evidence upon which to enter the amount of judgment.   Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true.

*Id.* at 154-55.   However, the Second Circuit was addressing a default judgment request under Rule 55(b)(2).   Rule 55(b)(2) is to apply, "[i]n all other cases," meaning "when the plaintiff's claim against a defendant is [not] for a sum certain or for a sum which can by computation be made certain."

The Court concludes the Rule 55(b)(2) standard does not have to be utilized when the Court itself, rather than the Clerk, reviews a Rule 55(b)(1) request, especially given the Local Rule allowing the Clerk to forward a request for default judgment under Rule 55(b)(1) to the Court. Accordingly, the Court finds the Rule 55(b)(1) standard is to be utilized for any request for entry of default judgment when the "plaintiff's claim against a defendant is for a sum certain or for a sum which can by computation be made certain," regardless of whether the Court or the Clerk is reviewing the request.   Therefore, the Court can grant such a request based upon "affidavit of the amount due," and is not required to

"conduct such hearings or order such references as it deems necessary and proper" in order to "determine the amount of damages or to establish the truth of any averment by evidence . . . ." FED. R. CIV. P. 55(b)(1) & (2). Accordingly, the Court concludes, when the documentary evidence available to counsel contains sum certain(s), an affidavit in support of entry of a default judgment under Rule 55(b)(1) can be made an attorney.

In determining the "sum certain," the court may rely on detailed affidavits or documentary evidence. *United Artists Corp. v. Freeman*, 605 F.2d 854.857 (5th Cir. 1979). Here, the Court relied upon the Contract, copies of checks disbursed to Defendants and then deposited, and Mr. Comfort's affidavit.    The Court finds the Contract and checks are admissible evidence under these circumstances as they are not hearsay, *see* FED. R. EVID. 803(6); *W. Coast Truck Lines, Inc. v. Arcata Comm. Recylcing Center, Inc.*, 846 F.2d 1239, 1246 n.5 (9th Cir. 1988); *United States v. Belluci*, 995 F.2d 157, 160-161 (9th Cir. 1993), and are authenticated under Federal Rules of Evidence 901(a), 901(b)(3), and 902(9).    Furthermore, Mr. Comfort stated in his declaration, "I am one of the attorneys for the plaintiff, am familiar with the records and files herein, and make this declaration based upon personal knowledge and belief."    Based on the above, the Court finds there was sufficient evidence before the Court in order for the Court to determine the sum certain of $432,000 (principal amount), the statutory prejudgment interest accrued on such amount, the $10,000 statutory treble damages under the CPA, and the taxable costs.    In addition, the Court determined the attorney's fees expended were reasonable.

1    Even though the Court finds there was sufficient evidence to support
2    entry of Default Judgment, the Court modifies the judgment as against Mr.
3    Morse to reduce the principal sum to $210,000 because this is the amount
4    identified in the documents as received by Mr. Morse pursuant to the
5    Contract.  The prejudgment interest is to be modified accordingly.  The
6    Court finds it is appropriate to enter judgment against Mr Morse as to
7    the $10,000 treble damages under the CPA and attorneys' fees and costs.
8    All such amounts are still joint and several with the other Defendants.
9    Accordingly, the Court grants in part Mr. Morse's motion to vacate and
10   directs entry of an amended judgment.

11   **For the above reasons, IT IS HEREBY ORDERED:**

12   1. CGR's Motion for Leave to Intervene & Motion to Quash
13   Garnishment, **(Ct. Rec. 31)**, is **DENIED.**

14   2. Defendant Morse's Claim of Exemption, **(Ct. Rec. 28)**, is **DENIED.**

15   3. Defendant Morse's Motion to Vacate Default Judgment, **(Ct. Rec.**
16   **30)**, is **DENIED IN PART (not vacated in its entirety)** and **GRANTED IN PART**
17   **(modified as against Mr. Morse).**

18   **IT IS SO ORDERED.**  The District Court Executive is directed to:

19   (A)  Enter this Order,

20   (B)  Enter an Amended Judgment, entering Judgment **against Mr. Morse**
21   (for $210,00.00 plus prejudgment interest in the amount of 12% per annum
22   until February 14, 2005, the date the initial judgment was entered, plus
23   treble damages in the amount of $10,000.00, plus the filing fee for this
24   action in the amount of $150.00, plus service fees in the amount of
25   $100.86, plus attorney's fees in the amount of $10,374.00, plus interest
26   at the rate of 2.85% per annum pursuant to 28 U.S.C. § 1961--this amount

ORDER ~ 17

is joint and several with the co-Defendants), and then Judgment **against the other Defendants** as previously entered (joint and several, except for Mr. Morse, which is joint and several as specified above).

(C)  Provide copies of this Order and Judgment to counsel.

**DATED** this ___10th___ day of May, 2005.


                         ___S/ Edward F. Shea___
                            EDWARD F. SHEA
                     United States District Judge

Q:\Civil\2004\3045.exempt.vacate.wpd

ORDER ~ 18